Jones, J.
The contentions of the relator are as follows:
. First — That under the home-rule provisions of the Constitution (Sections 3 and 7, Article XVIII) chartered municipalities have the absolute power to levy taxes for municipal purposes, which cannot be limited by any act of the general assembly, and that the provisions of the Smith one per cent, law are inapplicable to such municipalities.
Second — That if such power may be limited by general laws, the sections of the law relating to the 'budget commission (Sections 5649-3b and 5649-3c, General Code) do not in fact limit the power of a chartered municipality to levy taxes; and, furthermore, that these sections substitute a taxing authority in lieu of the municipal body and therefore are an unconstitutional delegation of legislative power.
Third — That the Smith one per cent, law has in effect been repealed as to chartered cities, because of its inconsistencies with an absolute taxing power granted to such cities by the home-rule provisions *89 of the Constitution, and is not continued in force under the saving clause contained in Schedule 20 of the Constitution adopted in 1912.
In so far as the statutory and constitutional provisions involved here are germane they are referred to in the course of this opinion. What is now popularly known as the “Smith one per cent, law’* comprises Sections 5649-2 to 5649-5b, inclusive, General Code.
Section 5649-2, General Code, provides that, with certain exceptions, the aggregate levy in any county, township, city, village, school district or other taxing district, for the fiscal year, shall not exceed for all purposes 10 mills on each dollar of the taxable property in any taxing district.
Section 5649-3a, General Code, provides that the fiscal officers of each taxing district therein named shall submit annual budgets to the county auditor, and, except in certain cases therein contained, also provides interior limitations of taxes which may not be exceeded, — for counties, 3 mills; for municipal corporations, 5 mills; for townships* 2 mills; and for school districts, 5 mills.
Section 5649-3b, General Code, designates the personnel of the budget commission, which is to consist of the county auditor, county treasurer and prosecuting attorney.
Section 5649-3c, General Code, provides that the county auditor shall submit to the budget commission the annual budgets of the fiscal affairs of the taxing districts for examination and ascertainment of the total amounts proposed to be raised therein. This section then provides as follows: “If such total *90 is found to exceed such authorized amount in any township, city, village, school district, or other taxing district in the county, the budget commissioners shall adjust the various amounts to be raised so that the total amount thereof shall not exceed in any taxing district the sum authorized to be levied therein. In making such adjustment the commissioners may revise and change the-annual estimates contained in such budgets, and may reduce any or all items in any such budget, but shall not increase the total of any such budget, or any item therein. The budget commissioners shall reduce the estimates contained in any or all such budgets by such amount or amounts as will bring the total for each township, city, village, school district, or other taxing district, within the limits provided by law.”
After such supervisory action the budget commissioners are required to certify their • action to the county auditor for the purpose of placing the levies upon the county tax list.
While the petition alleges that the city has complied with the law in its initial levy -for municipal purposes, there is no suggestion therein that this levy, together with the levies of the other taxing districts, will not exceed the aggregate 10 mills for county, city, township and school district purposes.
If the city of Toledo is exempt from the operation of the budget commission sections of the law, the inevitable conclusion would follow that under the operation of this law other taxing districts would be affected and serious consequences might ensue. Neither does the petition allege the submission of the municipal budget to the budget com *91 missioners, but, as hereinbefore stated, rests its case upon the legal basis that the Smith one per cent, law does not apply to a city that has adopted a charter.
The home-rule provisions of Sections 3 and 7, Article XVIII of the Constitution, adopted September 3, 1912, authorize chartered municipalities “to exercise all pozvers of local self-government Indisputably these provisions are hazy and ambiguous, ánd it is unfortunate that the members of the constitutional convention did not more fully define the powers of local self-government committed to chartered cities, and thus relieve the courts” from exercise of wide discretion and from never ending appeals for construction of this constitutional clause; and likewise relieve the judicial department of the government from the criticism too often made that it has exercised the power of framing a constitution — a power that has been lodged solely in the people.
It must be conceded that the provisions above named confer upon chartered cities powers that are not only purely local and purely municipal, but purely governmental. Taxation has always been recognized as a power of sovereignty. It is a function that is vital to the state, keeps it alive and prevents its dissolution. The state as the imperium must concern itself with all its agencies, not only its municipalities, but also its counties, townships, villages and school districts. The sovereign people of the state may yield a part of its sovereignty'by a constitutional provision; but whatever rule of construction may otherwise apply, wherever the con *92 tention is made that the state has yielded to a community a part of the sovereign power, the rule of liberal construction does not apply, but it must clearly and unambiguously appear that the state has done so by apt words contained in its constitution. The power of taxation in every form, the power of eminent domain, the power to establish court's of record or conciliation and to define their jurisdiction,' these -may be so employed by chartered cities as to affect only their own people, and, thus considered, seem local in character. But it does not follow that the home-rule sections above named endow municipalities with such powers, nor with the powers now claimed here. Especially is this true if consideration be given to other express provisions of the constitution.
In this case counsel for relator make the bold claim “that there is no limit upon the powers of municipalities that have adopted charters, in the levy that they may make of taxes” for purely municipal and governmental purposes. If sustained,- this would indirectly affect not only the state’s power to tax, but would affect taxing districts lying without chartered cities. If the city of Toledo has the absolute power now claimed for it, even the ability of its own citizens to respond to ' the necessities of the state and some of its subdivisions might be seriously disturbed.
If the Smith one per cent, law is inconsistent with the provisions of the present constitution, the law is void. The fallacy underlying the contention of the relator is the claim that the foregoing sections of the Constitution are dominant and control the *93 levy of taxes in chartered municipalities. Counsel seem to overlook the fact that the submission and adoption of these sections were synchronous with the submission and adoption of the following constitutional provisions relating directly to the power of municipalities to levy taxes and incur debts. Section 13, Article XVIII, under the head of “Municipal Corporations,” is as follows: “Laws may be passed to limit the power of municipalities to levy taxes and incur debts for local purposes, and may require reports from municipalities as to their financial condition and transactions, in such form as mky be provided by law, and may provide for the examination of the vouchers, books and accounts of all municipal authorities, or of public undertakings conducted by such authorities.” (Adopted September 3, 1912.)
This section of the Constitution was not only adopted at the same time the home-rule sections were adopted, but it explicitly and pointedly controls the subject-matter of municipal levies and municipal debts. Where, on that subject, the home-rule provision is wholly ambiguous, this is clear and precise. Expressum facit cessare taciturn.
Counsel for the relator admit that the latter portion of Section 13, Article XVIII, may apply, but claim it does not control the municipal power of a chartered city to levy taxes. It is not easy to follow the line of this argument inasmuch as both clauses are contained in the same section of the Constitution; but, it might be asked, of what efficacy would the latter portion of that section be, requir *94 ing municipal reports of financial conditions, if it was not the intention of the section to make it effective by delegating to the general assembly the power to limit municipal levies for local purposes ? The latter clause of the section merely supplements the former, and has but a single purpose in view — to make effective that which is expressed in the first clause of Section 13, Article XVIII. If there was any doubt about the construction to be given to this whole section, it is clarified by the official explanation of the constitutional convention submitted to the people of the state when the section was adopted. This explanation was printed and sent broadcast over the state under the title “Municipal Home Rule.” It is as follows: “To the general assembly is explicitly reserved the authority to limit the power of cities to levy taxes and incur debts for local purposes, to control elections, to examine into the financial condition and transactions of all municipalities.”
The view here taken is therefore reinforced by the construction placed upon that section by the members of the constitutional convention. This explanation was signed by its president and secretary. Evidently the people of Toledo by the adoption of the charter possessed the same view. For instead of granting the general power to levy and collect taxes on all the property therein they qualified that power by the word “lawfully” in the provisions of the charter above named. This could have been done with no other purpose than that of conferring the power of taxation which the cities of Ohio theretofore possessed; and the word “law *95 fully” used in the charter recognized the limitation upon that power contained in the constitution and laws of this state.
The Smith one per cent, law, so called, including its budget commission feature, was in force prior to the adoption of the constitutional amendment now under consideration. For, long before, the people of the state had limited the financial power of municipalities to levy and incur debts. The Constitution of 1851 contained the following provision (Section 6, Article XIII) :
“The general assembly shall * * * restrict their [cities and villages] power of taxation, assessment, borrowing money, contracting debts and loaning their credit, so as to prevent the abuse of such power.”
The restrictive power to levy taxes and incur debts in that provision of the constitution has in no wise been modified by the later adoption of Section 13, Article XVIII, above referred to. Although the Smith one per cent, law substantially as it is now was adopted prior to the adoption of the Amendment of 1912, it has not been repealed by any provision of the present constitution. The law is consistent with and in entire harmony with the constitutional provisions relating to the levying of taxes, and is specifically kept in force by virtue of Section 20 of the Schedule adopted on September 3, 1912, which provides that all laws then in force not inconsistent with the amendments shall continue to be in force until amended or repealed.
It is also contended that the delegation by the legislature to the budget commissioners of the *96 power to adjust the tax rates among the various taxing districts is a delegation of legislative power. Of course the same argument would apply as to this constitutional feature whether the municipalities were chartered or unchartered.
But is it a delegation of legislative power ?
The legislature, under the law involved, has placed certain limitations upon the taxing districts of the state. These limitations are purely legislative. It has also provided for an administrative and ministerial body for the purpose of ascertaining the facts concerning various budgets submitted, with a discretionary power to revise the tax rates in certain districts. It is evident that this can be done only through an administrative agency after an ascertainment of facts prerequisite to administrative action. This is in no wise a delegation of legislative power, and in that respect the appointment and official action of the budget commissioners do not violate the organic law. (France v. State, 57 Ohio St., 1, and Fassig v. State, ex rel., 95 Ohio St., 232.) Theretofore independent taxing functions were employed through other agencies, such as county commissioners, city councils and other administrative public bodies.
The administrative power here conferred is similar to that delegated to various commissions, both state and interstate, which are charged with the power to fix rates. The granting of this and similar powers by legislative bodies to officers with administrative functions has generally been held not to be a violation of the constitutional provision *97 relating to the delegation of legislative power. 6 Ruling Case Law, page 180.
That the members of the budget commission may not be members of the municipality involved, is a feature that does not invade any provision of the constitution. We have many administrative bodies in this state whose members are not residents of the various local units administered, and in the absence of express provision of the constitution denying this administrative policy the state is supreme, not only in the scheme of taxation, but also in the selection of the agencies that are chosen by the state to enforce it.
It therefore follows, since the city of Toledo is subject to the limitations of the Smith one per cent, law, that it must comply with its provisions, and subject itself to the supervision of the budget commissioners of Lucas county, and, in the absence of allegations in the petition disclosing such compliance, that pleading is rendered insufficient as against the general demurrer. The demurrer therefore is sustained and the petition dismissed.

Demurrer sustained.

Nichols, C. J., Newman, Matthias, Johnson and Donahue, JJ., concur.